UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| BRENDA WHITTAKER, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>    v.<br><br>AWESOME REI, LLC, a South Carolina limited liability company, and PATRICK RIDDLE, an individual,<br><br>                Defendants. | Case No. 2:22-cv-672-RMG |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Brenda Whittaker ("Whittaker" or "Plaintiff") brings this Class Action Complaint ("Complaint") against Defendants Awesome REI, LLC ("Awesome REI") and Patrick Riddle ("Riddle", and collectively with Awesome REI, "Defendants") to stop Defendants' practice of sending repeated, unsolicited text messages to consumers who are registered on the National Do Not Call Registry and to obtain redress for all persons similarly injured by its conduct. Plaintiff seeks an award of statutory damages to the members of the Class, plus court costs and reasonable attorneys' fees. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### PARTIES

1.    Plaintiff Whittaker is an individual who resides in Cottonwood, Arizona.

2.    Defendant Awesome REI, LLC is a South Carolina limited liability company whose principal place of business is located at 1000 Johnnie Dodds Blvd. #103-155, Mt. Pleasant, South Carolina 29464.

1

3. Defendant Riddle is an individual and a resident of the State of South Carolina.

## JURISDICTION & VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA" or the "Act"), a federal statute. This Court also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332 ("CAFA"), because the alleged Class consists of over 100 persons, there is minimal diversity, and the claims of the class members when aggregated together exceeds $5 million. Further, none of the exceptions to CAFA applies.

5. The Court has personal jurisdiction over Defendants and venue is proper in this District because they reside in this District, regularly conduct business in this District, and a substantial part of the events giving rise to the claims asserted here occurred in this District.

## COMMON ALLEGATIONS OF FACT

6. Defendant Awesome REI is a company that specializes in providing educational training programs to real estate investors.

7. Unfortunately for consumers, Defendants cast their marketing net too wide. That is, in an attempt to promote their business and to generate leads for their educational training services, Defendants conducted (and continue to conduct) a wide scale telemarketing campaign and repeatedly sends unsolicited text messages to telephones which appear on the national Do Not Call Registry.

8. Indeed, at no time did Defendants obtain prior express consent from Plaintiff or the class members orally or in writing to receive text messages from Defendants.

9. The TCPA was enacted to protect consumers from unauthorized text messages exactly like those alleged in this Complaint—text messages placed to numbers without prior

express written consent to persons who listed their phone numbers on the Do Not Call Registry. As such, Defendants not only invaded the personal privacy of Plaintiff and members of the putative Class, they also intentionally and repeatedly violated the TCPA.

10. At all times material to this Complaint Defendants were and are fully aware that unsolicited telemarketing text messages are being made to consumer's cellular telephones through their own efforts and that of their agents.

11. To the extent any third parties sent the text messages, the third parties acted on behalf of Defendants, for Defendants' benefit, and with Defendants' approval. Further, Defendants ratified the conduct by accepting the benefits of the text messaging campaign.

12. By sending the unsolicited text messages at issue in this Complaint, Defendants caused Plaintiff and the Class actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such text messages as well as a loss of value realized for any monies that consumers paid to their carriers for the receipt of such text messages. Furthermore, the texts interfered with and interrupted Plaintiff's and the other class members' use and enjoyment of their phones, including the related data, software, and hardware components. Defendants also injured the Plaintiff and class members by causing wear and tear on their phones.

13. On behalf of the Class, Plaintiff seeks an injunction requiring Defendants to cease all unauthorized text messaging activities to persons registered on the Do Not Call Registry and an award of statutory damages to the class members, together with pre- and post-judgment interest, costs and reasonable attorneys' fees.

## FACTS SPECIFIC TO PLAINTIFF

14. Plaintiff Whittaker is the primary and customary user of the cellular telephone

number ending in 9679. Whittaker registered the telephone number ending in 9679 on the national Do Not Call Registry on December 19, 2017.

15. On May 26, 2020, at 4:45 p.m., Plaintiff Whittaker received two unsolicited text messages from Defendants. The text messages were sent from the shortcode 38470. The text messages advertised Defendants' educational real estate services.

16. On May 26, 2020, at 4:57 p.m., Whittaker received additional unsolicited text messages from Defendants. The text messages were identical to the initial text messages and were also sent from the shortcode 38470.

17. On May 26, 2020, at 5:20 p.m., Whittaker received two additional unsolicited text messages from Defendants. Once again, the text messages were identical to prior text messages sent by Defendants.

18. A screenshot of the initial text message is reproduced below:



19. The text messages all included website links that redirect to www.vacanthousebank.com, a website owned and operated by Awesome REI. The website solicits the message recipients to purchase Defendants' real estate investing program titled, "The Vacant House Bank by Cameron Dunlap." Defendants claim that this training program "teaches new and seasoned investors how to systematically find off-market vacant properties and profit from them by quickly selling them as-is to hungry cash buyers already in the marketplace."[1]

20. On information and belief, Defendants have sent additional text messages to Plaintiff.

21. At no time, did Whittaker ever consent to receive text messages from Defendants. Further, Whittaker has never expressed any interest in Defendants' real estate training products or services.

22. Whittaker also has no prior relationship with Awesome REI or Riddle.

23. Defendant Riddle is the founder and Chief Executive Officer of Awesome REI. Riddle controls the day-to-day operations of Awesome REI.

24. On information and belief, Defendant Riddle has personal liability for the text messages allegedly made herein because he personally oversaw, directed, and executed the telemarketing and unauthorized solicitation campaign at issue. All texts were made with Riddle's oversight for the express benefit of the Defendants.

25. Moreover, on information and belief, Riddle was responsible for creating, implementing, and enforcing policies and procedures to ensure comply with the TCPA. Consequently, Defendant Riddle's failure to implement policies and procedures to avoid

---

1 https://awesomerei.com/vacant-house-bank/

violations of the TCPA further establishes his personal liability.

26.     To redress these injuries, Whittaker, on behalf of herself and the Class of similarly situated individuals, brings suit under the TCPA, which prohibits unsolicited text messages to telephone numbers registered on the national Do Not Call Registry. On behalf of the Class, Whittaker seeks an injunction requiring Defendants to cease all unauthorized text messaging activities, and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

27.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and all others similarly situated and seeks certification of the following Class:

> **DNC Registry Class:** All persons in the United States who from four years prior to the filing of the initial complaint in this action to the present: (1) Defendants, or a third person acting on behalf of Defendants, texted more than one time on his/her telephone; (2) within any 12-month period; (3) where the telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendants' products and services; and (5) for whom Defendants claims they obtained prior express consent in the same manner as Defendants claims they supposedly obtained prior express consent to call Whittaker, or for whom they did not obtain prior express written consent.

28.     The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and

assignees of any such excluded persons. Plaintiff anticipates the need to amend the class definition following appropriate discovery.

29. **Numerosity:** The exact number of members within the Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants sent text messages to thousands of consumers who fall into the defined Class. Members of the Class can be identified through reference to Defendants' business records.

30. **Typicality:** Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the members of the Class sustained damages arising out of Defendants' uniform wrongful conduct.

31. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

32. **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    (a)    Whether Defendants' conduct violated the TCPA;

    (b)    Whether Defendants systematically sent unsolicited text message advertisements to consumers whose telephone numbers were registered with the National Do Not Call Registry;

    (c)    Whether any third party made the texts and, if so, whether Defendants are

liable for such texts;

(d) Whether the Plaintiff and the other members of the Class are entitled to statutory damages; and

(e) Whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

33. **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if class members could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

34. **Conduct Similar Towards All Class Members:** By committing the acts set forth in this pleading, Defendants have acted or refused to act on grounds substantially similar towards all members of the Class to render certification of the Class for final injunctive relief and corresponding declaratory relief appropriate under Rule 23(b)(2).

**CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227, *et seq***
**(On Behalf of Plaintiff and the DNC Registry Class)**

35. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

36. 47 U.S.C. § 227(c)(5) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

37. The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." *See* 47 C.F.R. § 64.1200(c).

38. 47 C.F.R. § 64.1200(e) provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" and the Commission's Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

39.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long-distance transmission charges.
>
> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made."

40. Defendants and/or their agent(s) violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, multiple telephone solicitations to telephone subscribers like Plaintiff and the DNC Registry Class members who registered their respective cell phone numbers on the National DNC Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

41. Here, Defendants and/or their agent(s) sent more than one unsolicited text message to Whittaker and the other members of the DNC Registry Class within a 12-month period without having prior written express consent to send such text messages.

42. Each such text message was directed to a telephone number that had been registered with the National Do Not Call Registry for at least 30 days.

43. Whittaker and the other members of the DNC Registry Class did not provide consent to receive such telemarketing texts from Defendants or their agents.

44. Neither Defendants nor their agents have any record of consent to place such telemarketing text messages to Plaintiff or the other members of the DNC Registry Class.

45. Defendants violated 47 C.F.R. §§ 64.1200(d) and (e) by causing texts to be sent for telemarketing purposes to wireless telephone subscribers, such as Plaintiff and the members of the DNC Registry Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a do not call policy and a list of persons who request not to receive telemarketing texts.

46. Additionally, on information and belief, Defendants fail to maintain a written do not call policy that is available on request. On further information and belief, Defendants fail to train their employees and personnel involved in telemarketing in the existence and use of their do not call policy or do not call list.

47.     As a result of Defendants conduct as alleged herein, Whittaker and the members of the DNC Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled to, inter alia, receive at least $500 in damages for each such violation of 47 C.F.R. § 64.1200.

48.     To the extent Defendants' misconduct is determined to have been willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by Whittaker and the members of the DNC Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for the following relief:

A. An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class and appointing her attorneys as Class Counsel;

B. An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater all to be paid into a common fund for the benefit of the Plaintiff and the Class Members;

C. An award of trebled damages if willfulness is shown;

D. An order declaring Defendants' texts messages, as set out above, violate the TCPA;

E. An injunction requiring Defendants to stop placing texts to consumers registered on the National Do Not Call Registry absent prior express consent;

F. An award of pre-judgment interest;

G. An award of reasonable attorneys' fees and costs to be paid out of the common

fund prayed for above; and

H.    Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.


|  |  |
|---|---|
|  | **BRENDA WHITTAKER**, individually and on behalf of all others similarly situated, |
| Dated: March 3, 2022 | By: /s/ Margaret A. Collins<br>One of Plaintiff' Attorneys |

Margaret A. Collins, Esquire
meg@pslawsc.com
P.S.L.G., LLC d/b/a Palmetto State Law Group, LLC
2241 Bush River Road
Columbia, SC 29210
Office: (803) 708-7442
Facsimile: (803) 753-9352

Taylor T. Smith*
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 907-7628
Facsimile: (303) 927-0809

**pro hac vice* admission to be sought

*Counsel for Plaintiff and the Putative Class*